1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11  SECURITIES AND EXCHANGE              Case No. CV 13-7553 JAK (SS)
    COMMISSION,
12                                       **ORDER DENYING WITHOUT**
                         Plaintiff,      **PREJUDICE MOTION OF RECEIVER**
13                                       **DAVID P. STAPLETON FOR ORDER**
          v.                             **AUTHORIZING AND APPROVING REAL**
14                                       **PROPERTY SALES OUT OF**
    YIN NAN "MICHAEL" WANG, et al.,       **RECEIVERSHIP**
15
                         Defendants.     **(Dkt. No. 177)**
16

17

18        On February 24, 2015, David P. Stapleton, the Receiver in

19  the above-referenced action, filed an Amended Notice of Motion

20  and Motion for Order Authorizing and Approving Real Property

21  Sales Out of Receivership. ("Motion," Dkt. No. 177). The Motion

22  was supported by a Memorandum of Points and Authorities,

23  ("Memo.," Dkt. No. 175), and the Declaration of David P.

24  Stapleton. ("Receiver Decl.," Dkt. No. 176). Oppositions to

25  the Motion were due by March 10, 2015. (Motion at 2). However,

26  as of the date of this Order, no opposition or request for

27  extension of time to file an opposition has been received by the

28  Court. The Court has taken the matter under submission. For the

reasons stated below, the Receiver's Motion for Order Authorizing and Approving Real Property Sales Out of Receivership is DENIED WITHOUT PREJUDICE.

On October 15, 2013, the SEC brought the instant matter against Defendant Velocity Investment Group, controlled by individual Defendants Michael Wang and Wendy Ko; the four series of investment funds Velocity manages called the "Bio Profit Series" (Defendants Bio Profit Series I, LLC, Bio Profit Series II, LLC, Bio Profit Series III, LLC, and Bio Profit Series V, LLC); and Defendants' real estate arm, Defendant Rockwell Realty Management.  According to the SEC, Wang has admitted that he ran Velocity and the other corporate Defendants (the "Receivership Entities") as a Ponzi-like scheme in which new investor money was used to pay previous investors.  (See Complaint at 1-3).  In April 2014, pursuant to the parties' stipulation, the Court appointed David P. Stapleton as the Receiver to take control of the Receivership Entities.  (Dkt. No. 98 at 2).

The Receiver seeks authorization to sell the real properties located at (1) 2255 Cahuilla Street #33, Colton, California 92324 ("Cahuilla Street Property"); and (2) 1251 S. Meadow Lane #184, Colton, California 92324 ("Meadow Lane Property") (collectively, the "Properties").  (Memo. at 1).  The Receiver also asks the Court to waive the requirements of 28 U.S.C. § 2001, which provides that realty sales "under any order or decree of any court of the United States" must be made either at a public

1   auction (subsection a) or through a private sale (subsection b),

2   but only when certain procedural requirements are met.  (Id.).

3

4      The private sale of real property is governed by 28 U.S.C.

5   § 2001(b), which provides:

6

7          After a hearing, of which notice to all interested

8          parties shall be given by publication or otherwise as

9          the court directs, the court may order the sale of

10         such realty or interest or any part thereof at private

11         sale for cash or other consideration and upon such

12         terms and conditions as the court approves, if it

13         finds that the best interests of the estate will be

14         conserved thereby.  Before confirmation of any private

15         sale, the court shall appoint three disinterested

16         persons to appraise such property or different groups

17         of three appraisers each to appraise properties of

18         different classes or situated in different localities.

19         No private sale shall be confirmed at a price less

20         than two-thirds of the appraised value.  Before

21         confirmation of any private sale, the terms thereof

22         shall be published in such newspaper or newspapers of

23         general circulation as the court directs at least ten

24         days before confirmation.  The private sale shall not

25         be confirmed if a bona fide offer is made, under

26         conditions prescribed by the court, which guarantees

27

28

1        at least a 10 per centum increase over the price
2        offered in the private sale.

3

4    28 U.S.C. § 2001(a-b) (emphasis added).

5

6        Although subsection (b) affords the court some discretion in
7    determining whether the terms and conditions of a private sale
8    are in best interests of the estate, it is well accepted that
9    subsection (b) also includes several procedural requirements that
10   a court may not waive in making that discretionary determination.
11   As one court explained:

12

13       While § 2001(b) contains discretionary language that
14       allows courts to order the sale of realty "upon such
15       terms and conditions as the court approves, if it
16       finds that the best interests of the estate will be
17       conserved thereby," the statute also includes
18       mandatory language stating that (1) the court "shall
19       appoint" three appraisers, (2) "[n]o private sale
20       shall be confirmed at a price less than two-thirds of
21       the appraised value," (3) the sale "shall be
22       published" in newspapers at least ten days before
23       confirmation, and (4) the sale "shall not be
24       confirmed" if a bona fide offer guaranteeing "at least
25       a 10 per centum increase" is made.  28 U.S.C.
26       § 2001(b).  "The permissive language allowing the
27       Court discretion to determine what is in the best
28       interests of the estate is therefore limited by the

4

minimum standards delineated by Congress of what satisfies the best interest standard. These standards cannot be waived by this Court." Huntington Nat. Bank v. JS & P, L.L.C., No. 2:13-cv-13841, 2014 WL 4374355, at *2 (E.D. Mich. Sept. 4, 2014) (citation omitted); see also U.S. S.E.C. v. Wilson, No. 12-cv15062, at *2 (E.D. Mich. Mar. 28, 2013) ("The word shall in § 2001(b) unambiguously means must, and so this Court interprets the word just so. Before confirmation of any private sale, a court must appoint three disinterested persons to appraise the property. One will not do." (emphasis in original)).

Huntington Nat. Bank v. Najero, Inc., 2014 WL 5473054, at *1 (E.D. Mich. Oct. 27, 2014).

Numerous courts, including the Ninth Circuit, have recognized that the procedural provisions of section 2001(b) are mandatory and may not be waived by the court. See, e.g., United States v. Stonehill, 83 F.3d 1156, 1162 (9th Cir. 1996) ("private sales of real property" under section 2001(b) require the appointment of "three disinterested persons to appraise such property" and may not be confirmed at a price "less than two-thirds of the appraised value") (quoting 28 U.S.C. § 2001); Redus Florida Commercial, LLC v. College Station Retail Center, LLC, 777 F.3d 1187, 1186 n.16 (11th Cir. 2014) ("Courts have no power [under 28 U.S.C. § 2001(b)] to confirm a private sale at a price 'less than two-thirds of the appraised value.'"); United States

5

1   v. Brewer, 2009 WL 1313211, at *1 (M.D. Fla. May 12, 2009)

2   (court's power to authorize sale of real estate within a

3   receivership estate is "limited" by the "requirements for sale

4   set forth in 28 U.S.C. § 2001"); S.E.C. v. T-Bar Resources, LLC,

5   2008 WL 4790987, at *3 (N.D. Tex. Oct. 28, 2008) ("The procedures

6   outlined in § 2001(b) define the Court's authority to authorize

7   the sale of real property.  Accordingly, per the express terms of

8   the statute, a court must have the assistance of three appraisals

9   before confirming the private sale of real property. . . . Only

10  upon reviewing the multiple appraisals may a court finally

11  determine whether a proposed sale is in the best interests of the

12  estate." (internal citations omitted)).

13

14     The mandatory nature of the requirements in subsection (b)

15  pertaining to the private sale of real property is particularly

16  apparent when compared to the parallel statute governing the sale

17  of personal property, which provides:  "Any personalty sold under

18  any order or decree of any court of the United States shall be

19  sold in accordance with section 2001 of this title, unless the

20  court orders otherwise."  28 U.S.C. § 2004 (emphasis added).  In

21  contrast to the "unambiguously mandatory" meaning of "shall" in

22  section 2001(b), under section 2004, a court may require the sale

23  of personal property to comply with the strictures of section

24  2001, but "may also make an exception.  It may order otherwise."

25  S.E.C. v. Wilson, 2013 WL 1283437, at *1 (E.D. Mich. Mar. 28,

26  2013); see also Stonehill, 83 F.3d at 1160 ("[I]t is at the

27  district court's discretion whether to obtain appraisals before

28  foreclosing upon personal property [under 28 U.S.C. § 2004].").

However, "Congress did not confer similar discretion on the court" in enacting section 2001 for the sale of real property. Id. at 2. Under section 2001(b), "[t]he court shall appoint three appraisers -- no ordering otherwise. No discretion, period."[1] Id.

While "the court cannot waive the requirements of § 2001(b), the requirement can be waived by the parties." Huntington National Bank, 2014 WL 5473054, at *1. Here, however, the parties have not submitted a stipulation allowing the Receiver to circumvent the requirements of subsection (b).

Instead, the Receiver's Motion is predicated on the contention the sale of the Properties has been conducted in a manner sufficient to satisfy the purpose of section 2001(b), which is "to prevent 'the opportunity for frauds in private sales." Id. (quoting Acadia Land Co. v. Horuff, 110 F.2d 354, 354-55 (5th Cir. 1940)). The Receiver states that he engaged a real estate agent for the sale of the Properties. (Receiver Decl. ¶ 2). Prior to marketing the Properties, the Agent inspected the Properties and made preliminary sales

---

[1] Even with respect to the more discretionary power afforded district courts in the sales of personal property under section 2004, courts have held that section 2001's requirements are a "preferential course" that should ordinarily be followed even in personal property sales "except under extraordinary circumstances." S.E.C. v. Kirkland, 2008 WL 4264532, at *2 (M.D. Fla. Sept. 12, 2008) (quoting Tanzer v. Huffines, 412 F.2d 221, 222 (3d Cir. 1969)). Therefore, even if the instant matter involved the sale of personal as opposed to real property, the requirements of section 2001(b) would apply absent a showing of "extraordinary circumstances" not present here.

recommendations based on his knowledge of the area and other relevant factors, and provided an independent broker's opinion of value ("BOV"). (Id. ¶ 4). The Agent listed the Properties for sale on the Multiple Listing Service ("MLS") and hosted "walk-throughs" and open-houses for prospective buyers. (Id. ¶¶ 2 & 5). The Receiver states that after receiving two competitive offers for the Cahuilla Street Property, he made counter offers "very near" his original listing price, one of which was accepted. (Id. ¶ 6). The Receiver received only one bid for the Meadow Lane Property; the Receiver submitted a counter offer "near" his original asking price, which was accepted. (Id. ¶ 7). The Receiver states that both final offers are "fair and reasonable and would be in the best interests of the Receivership Estate." (Id. ¶¶ 6-7).

However well-intentioned the steps taken by the Receiver to obtain the best price for the Properties, they do not satisfy the requirements of section 2001(b). The cases that the Receiver cites in support of his contention that the Court has "extremely broad" discretion to determine appropriate relief in an equity receivership simply do not support the proposition that a court may ignore the mandatory provisions of section 2001(b) when supervising a private sale of real property by a receiver. For example, in S.E.C. v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005), the court affirmed the lower court's approval of a receiver's formula for distributing proceeds received from the sale of real property, but did not address at all how the sale of the property, which had already occurred, should have been

8

conducted, or the application of section 2001 to the sale. Similarly, Commodity Futures Trading Com'n v. Topworth Intern., Ltd., 205 F.3d 1107 (9th Cir. 1999), also concerned a distribution plan, not the procedures for selling real property. Neither case made any mention of 28 U.S.C. § 2001. Furthermore, the Receiver's citation to section 2001(a) regarding a court's discretion in setting the "terms and conditions" of a public sale of real property has no bearing whatsoever on a court's obligation to follow the procedures of section 2001(b) when supervising a receiver's proposed sale of real property through a private sale. (Motion at 2-8).

The Court does not have the authority to circumvent Congress's rules. Even if it did, the instant Motion does not provide the Court with sufficient information to determine whether the proposed sales of the Property are in the interests of the estate. For example, the Motion fails to disclose the qualifications of the real estate agent engaged by the Receiver and the agent's independent broker, the suggested listing price of the Properties proposed by either, or the basis for their recommendations. The Motion similarly fails to disclose the actual amount the Properties were listed for on the MLS or the length of time of the listings. The Receiver has also redacted the names and initials of the proposed buyers from the purchase agreements attached as exhibits to the Motion, so the Court has no way of verifying whether the prospective buyers have any relationship with any of the relevant individuals or entities in this action. (See Receiver Decl. Exhs. 1-2). Therefore, even if

9

1   the Court had discretion to ignore the requirements of section

2   2001(b), which it does not, it would not approve the sales of the

3   Properties as presented.   Accordingly, the Receiver's Motion for

4   Order Authorizing and Approving Real Property Sales Out of

5   Receivership is DENIED WITHOUT PREJUDICE.   The Receiver may

6   resubmit the Motion upon a showing of compliance with the

7   requirements of 28 U.S.C. § 2001, including the prior submission

8   of the names and resumes of three proposed appraisers for the

9   Court's approval, or a stipulation of all parties permitting the

10   Receiver to conduct a private sale without complying with the

11   provisions of 28 U.S.C. § 2001(b), i.e., a waiver by the parties.

12

13   DATED:   April 28, 2015

14                                        /S/
     SUZANNE H. SEGAL
15     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28