**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV 13-7553 JAK (SSx) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION OF RECEIVER DAVID P. STAPLETON FOR ORDER AUTHORIZING AND APPROVING SALES OF LOAN PORTFOLIO AND REAL PROPERTIES OUT OF RECEIVERSHIP** |
| v. | |
| YIN NAN "MICHAEL" WANG, et al., | |
| Defendants. | **(Dkt. No. 187)** |

On April 3, 2015, David P. Stapleton, the Receiver in the above-referenced action, filed a Notice of Motion and Motion for Order Authorizing and Approving Sales of Loan Portfolio and Real Properties Out of Receivership. ("Motion," Dkt. No. 187). The Motion was supported by a Memorandum of Points and Authorities, ("Memo.," Dkt. No. 188), and the Declaration of David P. Stapleton. ("Receiver Decl.," Dkt. No. 189). Oppositions to the Motion were due by April 28, 2015. (Motion at 2). However, as of the date of this Order, no opposition or request for extension of time to file an opposition has been received by the Court. The Court has taken the matter under submission. For the

reasons stated below, the Receiver's Motion for Order Authorizing and Approving Sales of Loan Portfolio and Real Properties Out of Receivership is GRANTED IN PART and DENIED IN PART.  Denial is WITHOUT PREJUDICE.

On October 15, 2013, the SEC brought the instant matter against Defendant Velocity Investment Group, controlled by individual Defendants Michael Wang and Wendy Ko; the four series of investment funds Velocity manages called the "Bio Profit Series" (Defendants Bio Profit Series I, LLC, Bio Profit Series II, LLC, Bio Profit Series III, LLC, and Bio Profit Series V, LLC); and Defendants' real estate arm, Defendant Rockwell Realty Management.  According to the SEC, Wang has admitted that he ran Velocity and the other corporate Defendants (the "Receivership Entities") as a Ponzi-like scheme in which new investor money was used to pay previous investors.  (See Complaint at 1-3).  In April 2014, pursuant to the parties' stipulation, the Court appointed David P. Stapleton as the Receiver to take control of the Receivership Entities.  (Dkt. No. 98 at 2).

The Receiver seeks authorization to sell the real properties located at (1) 1337 Cherry Avenue, Beaumont, California 92223 ("Cherry Avenue Property"); and (2) 1251 S. Meadow Lane #144, Colton, California 92324 ("Meadow Lane Property")[1] (collectively,

---

[1]  The Receiver previously sought authorization to sell a different unit at the Meadow Lane property, unit # 184.  (See Dkt. No. 177).  The Court denied the Motion without prejudice on April 28, 2015 for failure to comply with the requirements of 28 U.S.C. § 2001 (the "April 28 Order").  (See Dkt. No. 193).

2

the "Properties"); and a Receivership Entity loan portfolio consisting of eleven loans secured by real property (the "Loan Portfolio" or "Portfolio"). (Memo. at 1). The Receiver also asks the Court to waive the requirements of 28 U.S.C. § 2001, which provides that realty sales "under any order or decree of any court of the United States" must be made either at a public auction (subsection a) or through a private sale (subsection b), but only when certain procedural requirements are met.[2] (Id.).

A.   **The Properties**

The Receiver states that he engaged a real estate agent for the sale of the Properties. (Receiver Decl. ¶ 8). Prior to marketing the Properties, the Agent inspected the Properties and made preliminary sales recommendations based on his knowledge of the area and other relevant factors, and provided an independent broker's opinion of value ("BOV"). (Id. ¶ 9). The Agent listed the Properties for sale on the Multiple Listing Service ("MLS") and hosted "walk-throughs" and open-houses for prospective buyers. (Id. ¶ 11). The Receiver states that after receiving two competitive offers and making counter offers for the Cherry Avenue Property, he received a third offer that was higher than the original offers, the Receiver's original counter offers, and even the anticipated list price for the Cherry Avenue Property. (Id. ¶ 12). Upon further negotiation, the Receiver selected the

---

[2] As discussed in more detail below, a district court may, but is not required to, apply the procedural requirements of 28 U.S.C. § 2001 to the sale of personal property. See 28 U.S.C. § 2004.

third offer for recommendation to the Court. (Id.). After obtaining only one bid for the Meadow Lane Property, the Receiver submitted a counter offer providing that the Property was to be sold "as is," which was accepted. (Id. ¶ 13). The Receiver states that both final offers are "fair and reasonable and would be in the best interests of the Receivership Estate." (Id. ¶¶ 12-13). The Receiver proposes to pay an aggregate 6% commission of the total sales price of the Properties to the Agent (5%) and to the Receiver's in-house brokering staff (1%). (Id. ¶ 14).

As the Court has previously noted, (see Dkt. No. 193 at 3-4), the private sale of real property is governed by 28 U.S.C. § 2001(b), which provides:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before

1       <u>confirmation of any private sale, the terms thereof</u>

2       <u>shall be published in such newspaper or newspapers of</u>

3       <u>general circulation as the court directs</u> at least ten

4       days before confirmation.  <u>The private sale shall not</u>

5       <u>be confirmed if a bona fide offer is made</u>, under

6       conditions prescribed by the court, which guarantees

7       at least a 10 per centum increase over the price

8       offered in the private sale.

9

10  28 U.S.C. § 2001(a–b) (emphasis added).

11

12      Although subsection (b) affords the court some discretion in

13  determining whether the terms and conditions of a private sale

14  are in best interests of the estate, it is well accepted that

15  subsection (b) also includes several procedural requirements that

16  a court may not waive in making that discretionary determination.

17  As one court explained:

18

19      While § 2001(b) contains discretionary language that

20      allows courts to order the sale of realty "upon such

21      terms and conditions as the court approves, if it

22      finds that the best interests of the estate will be

23      conserved thereby," the statute also includes

24      mandatory language stating that (1) the court "shall

25      appoint" three appraisers, (2) "[n]o private sale

26      shall be confirmed at a price less than two-thirds of

27      the appraised value," (3) the sale "shall be

28      published" in newspapers at least ten days before

confirmation, and (4) the sale "shall not be confirmed" if a bona fide offer guaranteeing "at least a 10 per centum increase" is made. 28 U.S.C. § 2001(b). "The permissive language allowing the Court discretion to determine what is in the best interests of the estate is therefore limited by the minimum standards delineated by Congress of what satisfies the best interest standard. These standards cannot be waived by this Court." Huntington Nat. Bank v. JS & P, L.L.C., No. 2:13-cv-13841, 2014 WL 4374355, at *2 (E.D. Mich. Sept. 4, 2014) (citation omitted); see also U.S. S.E.C. v. Wilson, No. 12-cv15062, at *2 (E.D. Mich. Mar. 28, 2013) ("The word shall in § 2001(b) unambiguously means must, and so this Court interprets the word just so. Before confirmation of any private sale, a court must appoint three disinterested persons to appraise the property. One will not do." (emphasis in original)).

Huntington Nat. Bank v. Najero, Inc., 2014 WL 5473054, at *1 (E.D. Mich. Oct. 27, 2014); see also United States v. Stonehill, 83 F.3d 1156, 1162 (9th Cir. 1996) ("private sales of real property" under section 2001(b) require the appointment of "three disinterested persons to appraise such property" and may not be confirmed at a price "less than two-thirds of the appraised value") (quoting 28 U.S.C. § 2001); Redus Florida Commercial, LLC v. College Station Retail Center, LLC, 777 F.3d 1187, 1186 n.16 (11th Cir. 2014) ("Courts have no power [under 28 U.S.C.

§ 2001(b)] to confirm a private sale at a price 'less than two-thirds of the appraised value.'").

While "the court cannot waive the requirements of § 2001(b), the requirement can be waived by the parties." Huntington National Bank, 2014 WL 5473054, at *1.   Here, however, the parties have not submitted a stipulation allowing the Receiver to circumvent the requirements of subsection (b).   Instead, the Receiver's Motion is predicated on the contention the sale of the Properties has been conducted in a manner sufficient to satisfy the purpose of section 2001(b), which is "to prevent 'the opportunity for frauds in private sales.'"   Id. at *2 (quoting Acadia Land Co. v. Horuff, 110 F.2d 354, 354-55 (5th Cir. 1940)).

However well-intentioned the steps taken by the Receiver to obtain the best price for the Properties, they do not satisfy the requirements of section 2001(b).   The Court does not have the authority to circumvent Congress's rules.   Accordingly, to the extent that the Receiver seeks authorization to sell the Properties without complying with the requirements of section 2001, the Motion is DENIED WITHOUT PREJUDICE.   The Receiver may resubmit the Motion upon a showing of compliance with the requirements of 28 U.S.C. § 2001, including the prior submission of the names and resumes of three proposed appraisers for the Court's approval, or a stipulation of all parties permitting the Receiver to conduct a private sale without complying with the provisions of 28 U.S.C. § 2001(b), i.e., a waiver by the parties.

1    **B.    The Loan Portfolio**

2

3         The Loan Portfolio consists of eleven loans secured by real

4    property in California.  (Memo. at 4).  The loans were largely

5    made to distressed borrowers and none of the loans is in first

6    position.  (Id.).  Because the loans could conceivably be wiped

7    out by foreclosure on a senior loan, the Receiver concluded that

8    they could not be disposed of via a direct sale to borrowers but

9    were marketable only as a portfolio in which the risk of loss to

10   the purchaser on any one loan could be mitigated.  (Id. at 4-5).

11   Accordingly, the Receiver publicly listed the Portfolio on the

12   Loan Multiple Listing Service and received bids from interested

13   parties.  (Id. at 5).  The highest and best of the four offers

14   received was for $231,235.03, which the Receiver determined is a

15   "reasonable" purchase price.  (Id. at 6).  The Receiver proposes

16   to pay a 6% commission to his commercial entity, Stapleton Group,

17   Inc., which performed transactional and administrative services

18   in connection with the contemplated purchase and sale of the

19   Portfolio.  (Receiver Decl. ¶ 15).

20

21        The private sale of personal property is governed by 28

22   U.S.C. § 2004, which provides:  "Any personalty sold under any

23   order or decree of any court of the United States shall be sold

24   in accordance with section 2001 of this title, unless the court

25   orders otherwise."   28 U.S.C. § 2004 (emphasis added).   In

26   contrast to the "unambiguously mandatory" meaning of "shall" in

27   section 2001(b), under section 2004, a court may require the sale

28   of personal property to comply with the strictures of section

8

2001, but "may also make an exception.  It may order otherwise." S.E.C. v. Wilson, 2013 WL 1283437, at *1 (E.D. Mich. Mar. 28, 2013); see also Stonehill, 83 F.3d at 1160 ("[I]t is at the district court's discretion whether to obtain appraisals before foreclosing upon personal property [under 28 U.S.C. § 2004]."). However, even though district courts are afforded more discretionary power in the sales of personal property under section 2004, courts have held that section 2001's requirements are a "preferential course" that should ordinarily be followed even in personal property sales "except under extraordinary circumstances." S.E.C. v. Kirkland, 2008 WL 4264532, at *2 (M.D. Fla. Sept. 12, 2008) (quoting Tanzer v. Huffines, 412 F.2d 221, 222 (3d Cir. 1969)).

The Court finds that the Receiver has provided adequate and sufficient notice in connection with his proposed sale of the Loan Portfolio and exercises its discretion under section 2004 to excuse the Receiver from compliance with the provisions of 28 U.S.C. § 2001 with respect to the Loan Portfolio only. Accordingly, to the extent that the Receiver seeks authorization to sell the Loan Portfolio under the terms and conditions set forth in the Motion, the Motion is GRANTED.  The Court ORDERS as follows:

1.    The Purchase and Sale Agreement ("PSA") by and
      between the Receiver and the contemplated buyer
      of the Loan Portfolio submitted contemporaneously

with the Motion (<u>see</u> Receiver Decl. Exh. 1), is APPROVED;

2.   The proposed sale of the Loan Portfolio pursuant to the terms of the PSA, as submitted contemporaneously with the Motion, is APPROVED;

3.   Accordingly, the Receiver is AUTHORIZED to sell the Loan Portfolio out of receivership in accordance with the terms described in the Motion, including in accordance with the terms of the PSA; and

4.   The Receiver is AUTHORIZED to pay any commissions provided for in the PSA, as addressed in the Motion, in connection with the consummation of the sale of the Loan Portfolio.

IT IS SO ORDERED.

DATED:  May 15, 2015

                                        /S/
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE