LYNN M. DEAN, Cal. Bar No. 205562
Email: deanl@sec.gov
DAVID J. VAN HAVERMAAT, Cal. Bar No. 175761
Email: vanhavermaatd@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>YIN NAN "MICHAEL" WANG, WENDY KO, VELOCITY INVESTMENT GROUP, INC., BIO PROFIT SERIES I, LLC, BIO PROFIT SERIES II, LLC, BIO PROFIT SERIES III, LLC, BIO PROFIT SERIES V, LLC, and ROCKWELL REALTY MANAGEMENT, INC.,<br><br>Defendants. | Case No. CV 13-7553-JAK(SSx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SUPPLEMENTAL BRIEF REGARDING THE ADMISSIBILITY OF THE RECEIVER'S REPORT**<br><br>Ctrm: 750<br>Judge: Hon. John A. Kronstadt |

I.  **INTRODUCTION**

In January 2015, the Securities and Exchange Commission ("SEC") moved for summary judgment against Defendant Yin Nan "Michael" Wang ("Wang"). Since then, Wang obtained a continuance to allow him to depose the Receiver's forensic accountant, filed an opposition brief and evidentiary objections that address the Receiver's Report (the "Report"), and has filed two different supplemental briefs in which he could have specifically identified deficiencies in either the Report and the Receiver's March 20, 2015 Declaration summarizing the Report.[1]

Wang has not done so. In fact, in its May 28, 2015 order, the Court ordered Wang to *"identif[y]* by page number, with a citation to the corresponding underlying documents," the *"summary information in the Initial Report" that* Wang contends *"does not accurately reflect the contents of the [underlying] materials."* Dkt. No. 217. The Court also instructed that the filing should be "*limited to a discussion of that issue*." *Id.* Wang has utterly failed to comply, and has not cited a single instance where the Report erroneously summarizes any document. Instead, Wang tries to dispute the conclusions of the Report, and contends he cannot understand the Report "without testimony or further explanation" – even though he could have obtained that testimony or explanation when he deposed the Receiver and his accountant.

Despite being given three separate opportunities to do so, Wang cannot identify a single way in which the Report is unreliable or inaccurate.

II.  **ARGUMENT**

　　A.　**Wang Has Had Ample Opportunity to Critique the Report**

Wang makes the meritless complaint that he is unable to identify errors in the Report, because he claims the report does not specifically tie each of the statements therein to the underlying documents, or that he needs testimony to understand it. But the Receiver filed a summary of the Report with the Court on August 20, 2014. Dkt.

---

[1] Despite being given an opportunity to address that declaration in a sur-reply, Wang was likewise unable to identify any factual errors in it. Dkt. Nos. 174-3, 181.

1

No. 126. He served the report on Wang on August 23, 2014. Declaration of Lynn M. Dean ("Dean Decl."), Ex. 1. From that date until the close of discovery on December 31, 2014, Wang never requested copies of or information about the documents relied upon by the Receiver.[2] *Id.*, ¶ 2. The SEC nonetheless made these documents available for inspection and copying at the April 22, 2015 pre-trial meeting of counsel. *Id.*, ¶ 3. Wang never asked to inspect the documents, but on April 24, 2015, the SEC produced the general ledgers and bank statements relied upon by the Receiver in preparing his Report. *Id.*, ¶ 4. On June 8, 2015, the SEC produced the balance of the documents relied upon by the Receiver.[3] *Id.* Finally, Wang took two days of deposition testimony of the Receiver and his forensic accountant but failed to find evidence of a single error in the report.[4] *Id.*, ¶ 6.

### B. The Report is Admissible Under Rule 1006

Wang argues the Report is inadmissible under Federal Rule of Evidence 1006 because he contends it contains argument, the summary does not identify the documents relied upon, or the underlying documents are inadmissible. Wang is wrong.

First, the Report is admissible as a summary of the underlying information, regardless of any alleged argument. After an extensive forensic review of Defendants' existing books and records, bank and property records, and interviews with relevant witnesses, the Receiver found and reported that: Wang commingled funds and operated the BPS Funds as a unitary enterprise. Dean Decl. Ex. 2, pp. 8-15 and Exs. B-1-3. Wang started making payments to old investors with new investor money at least as early as January 2010. *Id.*, pp. 8-9, Exs. A-1-3, B-1-3. Wang also transferred at least $4.1 million to himself, another $442,000 to his ex-wife, and

---

[2] Wang did not serve a single document request in this action. Dean Decl., ¶ 2.
[3] The exception is explained in the Declaration of Jake DiIorio, Dean Decl. Ex. 4.
[4] Wang also argues that the general ledgers should have been produced in Quickbooks format, but his assumption that the Receiver must have used Quickbooks is incorrect. The schedules produced to Wang were generated by extracting all data from the Quickbooks format, and were in the format used by the Receiver. Declaration of David Stapleton ("Stapleton Decl."), ¶ 3.

2

caused the Receivership entities to transfer tens of millions of dollars to third parties. *Id.*, pp. 10-14, 28. Based on these findings, the Receiver reached the logical conclusion that Wang was running a "Ponzi-like" scheme, a conclusion that is neither argumentative nor inadmissible. In any event, the Court need not rely on the Receiver's conclusion, because there is more than sufficient information in the Report for the Court to find a Ponzi-like scheme on its own.

Second, the underlying documents are admissible as the business records of the Receivership entities, as public records, or as records affecting an interest in property. Fed. R. Evid. 803(6), 803(10), and 803(14) - (15).[5] As to authentication, Wang has agreed to stipulate to the admissibility of the bank records at trial, so it is unclear why he objects to them in this context. Dean Decl., ¶7. Finally, the property records were obtained by the Receiver from a title company routinely charged with procuring such records from County Recorders. Stapleton Declaration at ¶ 8.

Third, Rule 1006 does not require that a summary must be annotated to tie the underlying documents to each factual assertion, and Wang has cited no authority to the contrary. Fed. R. Evid. 1006. The Rule requires that the underlying documents be made available. Fed. R. Evid. 1006. The SEC has done so. Dean Decl. ¶¶ 3-4.

### C. The Report is Admissible under Rule 807

The Report is also admissible under the residual hearsay exception. Under Federal Rule of Evidence 807, a hearsay statement will not be excluded even if not specifically covered by a hearsay exception, provided that the statement has "circumstantial guarantees of trustworthiness," is evidence of a material fact, is more probative on the point for which it is offered than any other evidence than can be procured through reasonable efforts, and the general purposes of the Federal Rules and the interests of justice are served by admitting the statement into evidence. Fed.

---

[5] The SEC took custody of the records of the Receivership entities from their landlord after they were abandoned at the Velocity offices. Dkt Nos. 52-1 at ¶ 3, and 52-2. The Receiver took custody of the documents from the SEC. Dean Decl. Ex. 1, p. 4-5.

3

R. Evid. 807; *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 2010 U.S. Dist. LEXIS 86393, 17-24 (S.D. Tex. Aug. 23, 2010) (admitting forensic accounting of a court-appointed receiver).[6] There can be no question here that Wang had notice and an opportunity to respond, there are ample guarantees of the trustworthiness of the Report,[7] the Report evidences material facts regarding Wang's scheme, the Report is more probative than any other evidence the SEC can procure through reasonable efforts; and the purposes of the Federal Rules and the interests of justice are best served by its admission. Fed. R. Evid. 807.[8]

### D. Wang's Other Complaints Are Meritless

Wang claims the Receiver's "numbers cannot be verified" because the categories used in cash activity charts in the Report do not align perfectly with those found in the entities' general ledgers. Brief at 3. Because the Receiver relied on more than the general ledgers, including bank records, real property records, and investor files, he used his own category names, which do not alter the data presented in the Report. Stapleton Decl. ¶¶ 2, 7, 8.

Next, Wang argues that the cash activity charts must be in error because the 2005 Bio Profit Series I, LLC general ledger, which includes entries from 2005 forward, was inadvertently omitted from the materials produced to Wang. Brief at 3. But the Receiver used that ledger in preparing his Report, and its omission from the document production does not evidence an error in the report. DiIorio Decl. ¶ 4.

---

[6] The proponent of the evidence must give sufficient notice of intent to offer the statement, so that the party has a fair opportunity to meet it. Fed. R. Evid. 807.
[7] The Court-appointed Receiver was charged with conducting a forensic accounting. He has tested the reliability of all receivership entity accounting materials, including the general ledgers against third party bank statements, audited financials, and other materials, all of which are consistent with the Report. Stapleton Decl. ¶¶ 2, 3, 7.
[8] The Rules of Evidence "shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed. R. Evid. 102. Yet Wang seeks to turn these rules on their head, insisting that this matter proceed to a trial or an evidentiary hearing in which he may cross-examine the Receiver, even though he cannot identify a single instance in which the Report is incorrect or unreliable.

1     Wang also argues the Receiver's findings do not show that Wang operated a Ponzi-like scheme because, he claims, the Receivership entities generated more income than they paid out to investors. Brief at p. 4. Wang wrongly aggregates two separate categories of funds, ignores the periods of time when the entities lacked funds to pay returns as demonstrated in the "snapshots" provided in the Report,[9] and ignores fund disbursements that created negative returns. Stapleton Decl. ¶ 4.

    Wang wrongly argues that the chart at page 15 showing $38 million in related party payments conflicts with data in a chart on page 14. Brief p. 4. But these charts present different information. The chart on page 14 identifies only Velocity Investment Group, Inc. cash activity, while the chart of page 15 reports payments made from all the Entities to insiders and/or affiliates. Stapleton Decl., ¶ 5.

    Wang also argues that the section of the Report detailing the status of the real estate investments held by the Receivership is improper because it contains conclusions and the "underlying records are not identified." Brief at p. 5. To the contrary, the section simply summarizes the Receiver's review of the records related to these assets and his observations based upon that review. The underlying asset records have been produced pursuant to the Rule 1006 and the Court's Order, and that is all that was required. Fed. R. Evid. 1006.

### III. CONCLUSION

    For all the foregoing reasons, the Report should be admitted into evidence and the SEC's motion for summary judgment should be granted.

Dated: June 25, 2015                Respectfully submitted,

                                       */s/ Lynn M. Dean*
                                       Attorney for Plaintiff

---

[9] Wang claims that is was improper for the Receiver to use snapshots to illustrate commingling and the use of new investor funds to pay existing investor obligations. These monthly periods were not randomly selected, but are the periods of quarter-end activity, when actions like using new money to pay old obligations and commingling are most readily apparent. The snapshots are examples of the conduct. Stapleton ¶ 6.

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:

[X] **U.S. SECURITIES AND EXCHANGE COMMISSION,**
444 S. Flower Street, Suite 900, Los Angeles, CA  90071-9591
Telephone No.  (323) 965-3998; Facsimile No.  (213) 443-1905.

On June 25, 2015, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SUPPLEMENTAL BRIEF REGARDING THE ADMISSIBILITY OF THE RECEIVER'S REPORT** on all the parties to this action addressed as stated on the attached service list:

[ ] **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ] **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ] **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[X] **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[X] **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[X] **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X] **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ] **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 25, 2015             */s/ Lynn M. Dean*
                                 Lynn M. Dean

1

**SEC v. WANG, et al.**
**United States District Court—Central District of California**
**Case No.** CV 13-7553-JAK (SSx)

**SERVICE LIST**

Edward Gartenberg, Esq. (By ECF and Personal Delivery)
Gartenberg Gelfand Hayton & Selden, LLP
801 South Figueroa Street
Suite 2170
Los Angeles, CA  90017
Email:  egartenberg@gghslaw.com
*Counsel for Defendant Michael Wang*

Irving Einhorn, Esq. (By UPS Overnight)
Law Offices of Irving M. Einhorn
1710 10th Street
Manhattan Beach, CA  90266
Email:  ime@einhornlaw.com
*Counsel for Defendant Wendy Ko*

Joshua A. del Castillo, Esq. (ECF)
Allen Matkins Leck Gamble Mallory & Natsis LLP
515 South Figueroa Street
9th Floor
Los Angeles, CA  90071-3309
Email:  jdelcastillo@allenmatkins.com
*Counsel for Receiver David P. Stapleton*

David P. Stapleton (By UPS Overnight)
Stapleton Group
515 South Flower Street, 36th Floor
Los Angeles, CA  90071
Email:  david@stapletoninc.com
*Court-Appointed Receiver*