DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Receiver
DAVID P. STAPLETON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>YIN NAN "MICHAEL" WANG; WENDY KO; VELOCITY INVESTMENT GROUP, INC.; BIO PROFIT SERIES I, LLC; BIO PROFIT SERIES II, LLC; BIO PROFIT SERIES III, LLC; BIO PROFIT SERIES V, LLC; and ROCKWELL REALTY MANAGEMENT, INC.,<br><br>Defendants. | Case No. CV 13-7553-JAK (SSx)<br><br>THIRD INTERIM REPORT AND APPLICATION FOR FURTHER INSTRUCTIONS OF RECEIVER, DAVID P. STAPLETON<br><br>[Notice of Filing of Third Interim Report submitted concurrently herewith]<br><br>Date:  November 17, 2015<br>Time:  10:00 a.m.<br>Ctrm:  23<br>Judge: Suzanne H. Segal |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 17, 2015, at 10:00 a.m., in Courtroom 23 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, David P. Stapleton (the "Receiver"), the Court-appointed receiver for Velocity Investment Group, Inc., Bio Profit Series I, LLC, Bio Profit Series II, LLC, Bio Profit Series III, LLC, Bio Profit Series V, LLC, Rockwell Realty Management, Inc., and their respective subsidiaries and affiliates

(collectively, the "Receivership Entities" or "Entities"), will and hereby does present his Third Interim Report and Application for Further Instructions ("Report"), in accordance with Local Rule 66-6 and the Court's prior orders.

## I. PRELIMINARY STATEMENT.

Pursuant to this Court's April 1, 2014 Order Granting Plaintiff Securities and Exchange Commission's Motions for Preliminary Injunction and Appointment of a Receiver and Authorizing Service by Publication on Ko; (2) the Court's April 8, 2014 Order on Joint Stipulation Regarding the Appointment of David Stapleton as the Court Appointed Receiver (collectively with the April 1, 2014 Order, the "Appointment Orders"); (3) the Court's July 14, 2014 Order Granting, In Part, Receiver's: (1) Application for Instructions and for Order in Aid of Receivership; and (2) Motion for Order Authorizing Receiver to Employ and Compensate Professionals (the "Supplemental Order"), the Receiver has been charged with, among other things, assuming control over the Receivership Entities and their assets ("Receivership Assets"); performing an accounting of Receivership Assets and the financial condition of the Receivership Entities; investigating, locating, and recovering Receivership Assets; addressing outstanding litigation against the Receivership Entities; and preparing reports for the Court.

As reflected in previous Interim Reports, the Receiver has made substantial progress in obtaining documents from the Plaintiff Securities and Exchange Commission (the "Commission") and numerous third party sources, and has completed a second, final review and forensic analysis of these materials.  The Receiver has likewise undertaken a diligent Receivership Asset recover effort and, as of the date of this Report, holds approximately $1,022,062 for the benefit of the Receivership Entities, including approximately $41,401 in net proceeds from the recent sales of two (2) Receivership Entity-owned real properties.

During the period since the submission his Second Interim Report, the Receiver's efforts have largely concentrated on the identification, recovery, and

disposition of Receivership Assets, reducing or eliminating Receivership Entity liabilities, and responding to requests by the Commission and Defendant Wang in connection with the Commission's Motion for Summary Judgment and related matters.

As with previous Interim Reports, due to the nature of the information obtained by the Receiver and the complexity of the matters presented, the Receiver may need to modify his findings and recommendations after further investigation and consideration. As discussed below, while the Receiver has made significant progress in the period since the submission of his Second Interim Report, additional work – particularly with respect to asset recovery and disposition – remains outstanding.

## II.  GENERAL BACKGROUND.

The Court and any interested parties are invited to review the following materials[1] for a general summary of the relevant facts underlying the above-captioned case and the activities of the Receiver and his Professionals:

- Complaint of Plaintiff Securities and Exchange Commission (the "Commission") (filed October 15, 2013; Docket No. 3.)
- Commission's Ex Parte Application and supporting materials (filed October 15, 2013; Docket Nos. 4-11.)
- Order Granting Commission's Motions for Preliminary Injunction and Appointment of Receiver (entered April 1, 2014; Docket No. 93.)
- Stipulation for Order Regarding the Appointment of David Stapleton as Receiver and associated materials, including Receiver's Preliminary Report (filed April 3, 2014; Docket No. 94.)
- Order on Joint Stipulation for Order Regarding the Appointment of David Stapleton as Receiver (entered April 8, 2014; Docket No. 98.)

---

[1] The identified materials, and more, are available on the Receiver's website, www.velocityreceivership.com.

- Supplemental Order (entered July 14, 2014; Docket No. 125.)
- Initial Report and Application for Further Instructions of Receiver ("Initial Report") (filed August 20, 2014; Docket No. 126.)
- First Application for Order Granting First Fee Application for Payment of Fees of Receiver and Professionals (filed August 25, 2014; Docket No. 128.)
- Order Granting In Part Receiver David P. Stapleton's Application for Further Instructions (the "Authorization Order") (entered October 7, 2014; Docket No. 145.)
- Receiver's First Interim Report and Application for Further Instructions (filed December 5, 2014; Docket No. 151.)
- Supplemental Report and Application for Further Instructions ("Supplemental Report") (filed January 7, 2015; Docket No. 155.)
- Second Interim Application for Payment of Fees and Reimbursement of Expenses of Receiver and Professionals ("Second Fee Application") (filed January 7, 2015; Docket Nos. 157159.)
- Order Granting, In Part, First Interim Report and Application for Further Instructions (entered January 14, 2015; Docket No. 166.)
- Order Granting Second Fee Application and Supplemental Report (entered February 17, 2015; Docket No. 173.)
- Receiver's Second Interim Report and Application for Further Instructions (filed April 1, 2015; Docket Nos. 184-185.)
- Receiver's Motion for Order Authorizing and Approving Sale of Loan Portfolio and Real Properties out of Receivership (the "Loan Sale Motion") (filed April 3, 2015; Docket Nos. 187-189)
- Order Granting Loan Sale Motion (entered May 16, 2015; Docket No. 204)

- Receiver's Motion to Approve Receiver's Settlement with Huntington Capital L.P. (the "Settlement Motion") (filed June 1, 2015; Docket Nos. 218-220.)
- Receiver's Motion for Order Authorizing and Approving Sale of Commercial and Residential Real Properties out of Receivership (the "Property Sale Motion") (filed June 15, 2015; Docket Nos. 223-227 and 229-230.)
- Receiver's Supplemental Report Regarding Property Sale Motion (the "Highland Supplemental Report") (filed July 28, 2015; Docket No. 238.)
- Minute Order Granting, In Part, and Denying, In Part, Commission's Motion for Summary Judgment (entered August 18, 2015; Docket No. 246.)
- Order Granting Settlement Motion (entered August 26, 2015; Docket No. 247.)
- Order Granting Property Sale Motion (entered August 26, 2015; Docket No. 248.)

## III.   SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS.

As reflected above, many of the Receiver's efforts since the submission of his Second Interim Report directly relate to the recovery and preservation of the estate of the Receivership Entities and the disposition of real property Receivership Assets. The following reflects a summary of the Receiver's activities and efforts since the submission of his Second Interim Report:

### A.   Marshalling And Preservation Of Receivership Assets.

As noted above, the Receiver presently holds approximately $1,022,062 for the benefit of the Receivership Entities. Sources of the Receiver's recoveries, since the inception of this matter include:

- Sale of a receivership loan portfolio;

- Sale of receivership properties;
- Residential tenants and housing authorities;
- Property managers;
- Residential loan borrowers and loan servicers;
- Interest on receivership balances; and
- Miscellaneous other sources.

**B.    Disposition Of Real Property Receivership Assets.**

As reflected in the Court's prior orders, the Receiver has been authorized to market and prepare real properties owned by the Receivership Entities for sale. The present status of those properties is as follows:

1. <u>Loan Portfolio Owned by the Receivership Entities.</u>

As addressed in previous Interim Reports, the Receivership Entities owned pool of loans made to various homeowner third parties, secured by junior or subordinated interests in real estate. At the time of the Receiver's appointment, the majority of the notes held by the Receivership Entities were not being serviced. For these non-serviced notes, the Receiver contacted borrowers directly and attempted to determine the current status of the loans. In most cases, the Receiver found that there was not adequate supporting documentation (including loan agreements, notes and payment history) to determine the outstanding principal balance and terms for current payments.

Given the nature of these loans and the documentation available to the Receiver, the Receiver engaged in a diligent effort to dispose of the loans, initially contemplating either a discounted payoff to borrowers or a sale of the entire pool to a third party buyer. Ultimately, because the Receiver was unable to negotiate discounted payoffs with borrowers, he elected to market and sell the loan portfolio. As noted above, the Receiver's Loan Sale Motion was filed on April 3, 2014 and granted on May 15, 2015. The sale of the loan portfolio closed, resulting in a net

return for the benefit of the Receivership Entities in the amount of approximately $230,000.

### 2. Residential Properties Owned by the Receivership Entities.

As reflected in the Court's recent Order Granting Property Sale Motion, the Receiver was recently authorized to close the sale of four (4) residential real properties out of receivership, two of which have now closed. The sales closed on September 25 and 30, 2015, respectively, and yielded net proceeds for the benefit of the Receivership Entities in the amount of $41,404, after the payment of outstanding liens and the resolution of substantial outstanding receivership liabilities.

In addition to those residential real properties already sold, the Receiver is marketing a total of twenty-five (25) additional residential real properties, many of which are now under contract, and fifteen (15) of which the Receiver intends to submit for Court approval and authorization shortly. Assuming the Receiver ultimately successfully completes the sales of all of these properties, he expects the sales to yield a net return for the benefit of the Receivership Entities in the amount of approximately $1.8 million.

The Receiver continues to administer the remaining Receivership Estate properties as described in previous Interim Reports, including via reviewing lien histories and notices regarding all real properties owned by the Receivership Entities, and taking actions necessary to guard against impermissible creditor self-help. By way of example, the Receiver submitted a cease and desist letter to a Receivership Entity creditor who sought to foreclose on receivership property located at 9649 Bismark Place, Stockton, California 95209. The Receiver has since received an offer to purchase the property and expects so request Court approval and authorization of such a sale shortly.

### 3. Commercial Real Property Owned by the Receivership Entities.

As reflected in the Property Sale Motion and the Receiver's later Highland Supplemental Report, the Receiver originally negotiated a proposed purchase and

sale of the real property located 26655 Highland Avenue, Highland California (the "Highland Property") for $3.8 million.[2] After the submission of the Property Sale Motion, the Receiver's buyer withdrew its offer to purchase, apparently as a result of interference by an entity affiliated with a third party claiming a security interest in the Highland Property.

While this improper interference was successful in compromising the Receiver's effort to sell the Highland Property as addressed in the Property Sale Motion, the Receiver immediately thereafter renewed his marketing and sale efforts for the Highland Property. The Receiver has since negotiated a second prospective purchase and sale for the Highland Property, this time with a purchase price of $3.5 million. Given that this price is $300,000 lower than the price the Receiver would previously have realized but for the improper interference described in the Highland Supplemental Report, the Receiver may request relief from this Court, in the form of sanctions or declaratory relief against the interfering party, in connection with the Receiver's anticipated renewed motion to sell the Highland Property.

### C. Approaches To Remaining Receivership Assets.

The remaining Receivership Assets subject to administration by the Receiver generally fall into three (3) categories: (1) real properties potentially available for disposition; (2) assets to be "clawed back" into the estate of the Receivership Entities; and (3) affirmative claims available for prosecution by the Receiver.

#### 1. Real Properties Potentially Available for Disposition.

##### (a) The Fallbrook Property.

As previously reported, the real property located at 219 Rancho Bonito Road, Fallbrook, California (the "Fallbrook") Property is a residential property owned by Bio Profit Series I, LLC ("BioProfit"), which obtained title to the property via a non-

---

[2] This amount was expected to result in a net cash recovery of $400,000, along with the release of liens against other receivership properties serving as additional collateral for the first lien on the Highland Property.

1  judicial foreclosure concluded on or around September 22, 2010.  The Fallbrook
2  Property is currently occupied by Anthony Arand, who was the record owner of the
3  property prior to the BioProfit foreclosure and who maintains that he has certain
4  rights against the property, negotiated with BioProfit's agents in the pre-receivership
5  period.  Despite claiming, among other interests, a month-to-month lease for the
6  property[3], Mr. Arand has made no payments to the Receiver in connection with the
7  property since the inception of the receivership.

8      As noted in a prior Interim Report, the Receiver has been actively negotiating
9  with Mr. Arand to sell the Fallbrook Property to him, provided the transaction
10 remains at arms-length and the price paid is commensurate with its market value.[4]
11 As a result of the Receiver's continued efforts, and the efforts of his listing agent,
12 Mr. Arand has nor submitted a formal, written purchase offer, and the Receiver has
13 opened escrow in anticipation of seeking Court approval of the sale of the Fallbrook
14 Property.

15     Mr. Arand has commenced the action styled <u>Arand v. Peninsula Equity, Inc.,</u>
16 <u>et al.</u>, San Diego Superior Court Case No. 37-2015-00007956-CU-OR-NC (the
17 "Arand Action"), seeking to quiet title to the Fallbrook Property, free and clear of all
18 interests and encumbrances, including those of the Receiver.  The commencement
19 of the Arand Action may violate the terms of Article X of the Appointment Order.

20     The Receiver remains committed to an appropriate disposition of the
21 Fallbrook Property, including via a Court-approved sale to any other interested
22 buyer, should the anticipated sale not materialize.  Of course, such a disposition
23 must be negotiated at arms-length and result in an appropriate net benefit to the
24 Receivership Entities.

---

[3] Mr. Arand also claims to have entered into a pre-receivership agreement to purchase the property, but the sale was never consummated.
[4] The Receiver had also been marketing the Fallbrook Property publicly, but temporarily suspended such efforts when it appeared an agreement with Mr. Arand could be reached.  These marketing efforts have since resumed.

      (b) *The Ojai Property.*

  As previously reported, the Receivership Entities also have an interest in the real property located at 158 Rockaway Road, Oak View, California (the "Ojai Property"). While the Ojai Property is not part of the receivership estate, having been transferred in the pre-receivership period from BioProfit to Ojai Oakview, LLC ("Ojai Oakview"), an entity at least partially controlled by an Entity insider, for no apparent consideration. The Receiver has therefore tentatively determined that the Ojai Property was fraudulently transferred to Ojai Oakview. Based on the records available to the Receiver, the Ojai Property may be worth as much as $2.3 million, although it is subject to a number of outstanding liens.

  In or around March 2015, the Receiver made a turn-over demand to Ojai Oakview's counsel. Since then, the Receiver and counsel for Ojai Oakview have been engaged in detailed discussions regarding the potential turn-over of the property, or an alternative resolution that would allow Ojai Oakview to retain the property while making a payment to the Receivership Entities. Ojai Oakview maintains that the Ojai Property is "underwater" and that it does not have funds sufficient to repay the Receiver an amount even approaching the more than $4.5 million that the Entities put into the property. While the Receiver is sensitive to Ojai Oakview's position, its status as a putative fraudulent transferee means that the Receiver can agree to no resolution that does not result in a meaningful return to the Entities. At present, the Receiver's most recent resolution demand is pending. The Receiver hopes to arrive at a tentative agreement within thirty (30) days of this Report.

  **D.** **Elimination Of Receivership Entity Liabilities.**

  As noted in prior Interim Reports, at the time the Receiver was appointed, the Receivership Entities were the targets of the following litigation and judgment enforcement efforts, now resolved:

**Allen Matkins Leck Gamble Mallory & Natsis LLP**

1024879.01/LA       -10-

### 1. The Huntington Capital Litigation.

Huntington Capital, L.P. ("Huntington") lent $1.5 million, secured by the Ojai Property, and later had its security interest subordinated to that of BioProfit. Huntington commenced litigation to reinstate its lien priority, only to have its lien extinguished by BioProfit's acquisition and foreclosure of the senior-most lien on the property. This resulted in the dismissal of its original state court action against BioProfit, and the commencement of the California Court of Appeal matter styled *Huntington Capital, LP v. Autumn Years at Ojai; et al.*, Case No. B252233 (the "Huntington Appeal")

Roughly contemporaneously with the Huntington Appeal, Huntington commenced the action styled *Huntington Capital, LP v. Bio Profit Series I, LLC; et al.*, Ventura Superior Court Case No. 2014-00450526-CU-NP-VTA (the "Ventura Action"), challenging what it identified as the fraudulent transfer of the Ojai Property and, again, seeking more than $1.5 million in damages against certain Receivership Entities.

With the Court's permission, and as reflected in its Order granting the Settlement Motion, the Receiver successfully resolved both the Huntington Appeal and the Ventura Action. Specifically, both matters have been dismissed, with prejudice, against the Receivership Entities, with a full release from Huntington, in exchange for a one-time, lump-sum payment of $12,000.00 from the Receivership Entities to Huntington. In so doing, the Receiver secured the release of more than $1.5 million in prospective Receivership Entity liability for a single payment of $12,000.00.

### 2. The Stovall Judgment.

In or around January 2014, months before the Receiver was appointed, Ms. Shirley Stovall, a pre-receivership creditor, secured a judgment (the "Stovall Judgment") against BioProfit in the amount of $45,684.64 in the action styled *Stovall v. Bio Profit Series I, LLC; et al.*, Los Angeles Superior Court Case No.

BC405576. The Stovall Judgment was recorded against a number of real properties owned by the Receivership Entities in the pre-receivership period.

As the Court is aware, and assuming certain conditions (all present here), the appointment of a receiver does not disturb pre-existing liens upon receivership property, regardless of whether a lien has its origins in contract or arises by operation of law. See, e.g., SEC v. Presto Telecomm., Inc., 2007 U.S. Dist. LEXIS 75699, *16 (S.D. Cal. Oct. 11, 2007) (ordering the receivership to pay the creditor for a pre-existing lien secured by a deed of trust.). Accordingly, the Stovall Judgment was subject to satisfaction upon the sale of any Receivership Assets against which it was recorded, including the real properties which the Court recently permitted to be sold out of receivership. These sales have closed and the Stovall Judgment has been fully satisfied. The Stovall Judgment will be released as against any remaining Receivership Assets.

### E. Addressing Post-Summary Judgment Matters.

The Court entered a Minute Order, granting in part and denying in part, the Commission's Motion for Summary Judgment[5] ("MSJ") on August 18, 2015. While the Court granted the MSJ on the Commission's substantive allegations, it declined to enter a judgment awarding damages against Defendant Wang on the grounds that no evidence had been presented with the MSJ sufficient to calculate such an award. On August 28, 2015, the Commission filed a Motion for Monetary Relief and Entry of Final Judgments against Yin Nan "Michael" Wang and Wendy Ko (its "Damages Motion") (see Docket No. 294), in connection with which the Receiver submitted a Declaration attesting to the conclusions and amounts presented in his Initial Forensic Accounting and Second Forensic Accounting Reports. Defendant Wang has filed a motion seeking to compel the Receiver to be deposed as to the contents of his Declaration. (See Docket Nos. 253-255.) The Receiver anticipates opposing

---

[5] The Receiver previously submitted a Declaration in connection with the Commission's MSJ.

this motion on the grounds that, at least, the requested deposition is unnecessarily duplicative and would impose an improper burden upon the Receivership Entities.

### F. Creditors And Claim Amounts.

The Receiver has assembled a preliminary list of investors and creditors, from a variety of sources, including data retrieved from Receivership Entity records, correspondence from investors, and other sources. In addition, investors and creditors have registered (and may continue to do so) at the Receiver's website, velocityreceivership.com, thereby providing an additional source of information to develop an improved investor/creditor list.

As discussed above, the Receiver has recovered, in the aggregate, approximately $2 million for the benefit of the Receivership Entities, and presently holds $1,022,062. He anticipates that the sale of the remaining properties owned by the Receivership Entities will yield substantial additional returns, as much as an additional $1.8 million. However, the Receiver's Receivership Assets identification, recovery, and deposition efforts remain ongoing. Accordingly, although the Receiver had initially anticipated proposing a claims process – including an interim claims process – to the Court by the date of this Report, the parameters of an eventual distribution to investors and creditors cannot yet be described with any certainty. The Receiver therefore defers to a subsequent Interim Report or motion any discussion of claim amounts, a claims process, or a plan for distribution.

### G. Preparation Of Appropriate Tax Documents.

This Court previously authorized the Receiver to engage Lavine, Lofgren, Morris, & Engleberg, LLP ("LLME") to serve as his tax accountant and professionals. Given the Court's recent formal finding in the Order granting the Commission's MSJ that the Receivership Entities were operated as a unitary enterprise, LLME is in the process of revising prior draft tax materials to reflect the Entities' collective submission of returns as a Qualified Settlement Fund. Of course, should the Receiver determine that individual returns are required for any pre-

receivership period, LLME will prepare and submit such returns as well, likely on an "informational" basis.

## IV. PETITION FOR FURTHER INSTRUCTIONS.

Based on the facts as presented above, the Receiver respectfully requests that the Court authorize and approve the following recommendations and proposals:

(1) Accept and approve the information presented in this Report.

(2) Authorize the Receiver to continue his Receivership Asset recovery efforts and disposition efforts.

(3) Authorize the Receiver to continue to review and expand his list of Entity investors and creditors and to develop a proposed claims process for Court review and approval.

(4) Authorize the Receiver and his tax professionals to prepare and submit any and all necessary and appropriate tax documents on behalf of the Entities..

Dated: October 15, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
TIM C. HSU

By:   */s/   Joshua A. del Castillo*
JOSHUA A. DEL CASTILLO
Attorneys for Receiver
DAVID P. STAPLETON

# VERIFICATION

I have read the foregoing THIRD INTERIM REPORT AND APPLICATION FOR FURTHER INSTRUCTIONS OF RECEIVER, DAVID P. STAPLETON and know its contents.

I am the Receiver appointed in this action. The matters stated in the foregoing document are true of my own knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 15, 2015, at Los Angeles, California.

_____
David P. Stapleton, Receiver

# PROOF OF SERVICE

*Securities and Exchange Commission v. Yin Nan "Michael" Wang; Velocity Investment Group, et al.*
USDC, Central District of California – Western Division (Los Angeles) – Case No. 2:13-cv-07553-JAK-SSx

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 S. Figueroa Street, 9th Floor, Los Angeles, California 90071-3309.

A true and correct copy of the foregoing document(s) described as: **THIRD INTERIM REPORT AND APPLICATION FOR FURTHER INSTRUCTIONS OF RECEIVER, DAVID P. STAPLETON** will be served in the manner indicated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – the above-described document will be served by the Court via NEF. On **October 15, 2015**, I reviewed the CM/ECF Mailing Info For A Case for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

    - **Andrew Cowan**
      acowan@gallo-law.com

    - **Lynn M. Dean**
      deanl@sec.gov, LAROFiling@sec.gov, kassabguir@sec.gov, berryj@sec.gov, irwinma@sec.gov

    - **Joshua A. del Castillo**
      jdelcastillo@allenmatkins.com,athorbourne@allenmatkins.com

    - **Milena Dolukhanyan**
      mdolukhanyan@gghslaw.com

    - **Edward Gartenberg**
      egartenberg@gghslaw.com, mdolukhanyan@gghslaw.com, ssimich@gghslaw.com

    - **Philip C. Law**
      plaw168@gmail.com

    - **REO Property Group, LLC**
      pLaw168@gmail.com

    - **David J. VanHavermaat**
      vanhavermaatd@sec.gov, LAROFiling@sec.gov, carnegieo@sec.gov, berryj@sec.gov,irwinma@sec.govp

2.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served)**: On **October 15, 2015**, I served the following person(s) and/or entity(ies) in this case by placing a true and correct copy thereof in a sealed envelope, U.S. Mail first class, and/or with an overnight mail service addressed as stated below. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. postal service on that same day in the ordinary course of business.

989965.42/LA

- 1 -

| | |
|---|---|
| Franchise Tax Board (FTB)<br>P.O. Box 2952<br>Sacramento, CA  95812-2952 | **Via U.S. Mail** |
| Internal Revenue Service<br>880 Front Street<br>San Diego, CA  92101-8869 | **Via U.S. Mail** |

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **October 15, 2015** at Los Angeles, California.

/s/ *Martha Diaz*
Martha Diaz