DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Defendant
DAVID STAPLETON, Receiver for VELOCITY
INVESTMENT GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          v.<br><br>YIN NAN "MICHAEL" WANG, WENDY KO, VELOCITY INVESTMENT GROUP, INC., BIO PROFIT SERIES I, LLC, BIO PROFIT SERIES II LLC, BIO PROFIT SERIES III, LLC, BIO PROFIT SERIES V, LLC, and ROCKWELL REALTY MANAGEMENT, INC.,<br><br>                    Defendants. | Case No. CV 13-7553-JAK (SSx)<br><br>Date:   May 21, 2019<br>Time:   10:00 a.m.<br>Ctrm:   590 - 5th Floor<br>Judge Hon. Suzanne H. Segal<br> Magistrate Judge<br><br>FINAL REPORT AND ACCOUNTING OF RECEIVER, DAVID P. STAPLETON<br><br>[Notice of Motion and Motion to Conclude Receivership; Memorandum of Points and Authorities; Declaration of David Stapleton; Proposed Order; and Final Fee Application submitted concurrently herewith] |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1132914.07/LA

-1-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ........................................................................3

II.  GENERAL BACKGROUND ..........................................................................4

III. SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS ....................5

    A.   Marshalling and Preservation of Receivership Assets ........................5

    B.   Disposition Of Real Property Receivership Assets .............................6

        1.   Loan Portfolio Owned by the Receivership Entities .................6

        2.   Residential Properties Owned by the Receivership Entities ......................................................................................6

        3.   Commercial Real Property Owned by the Receivership Entities ......................................................................................7

        4.   Ojai Property Settlement ...........................................................7

        5.   Refund of Monies Improperly Levied by the Franchise Tax Board ........................................................................................8

    C.   Performing An Accounting And Analysis of the Receivership Entities' Financial Activities and Condition ...................8

    D.   Elimination Of Receivership Entity Liabilities ...................................9

        1.   The Huntington Capital Litigation ............................................9

        2.   The Stovall Judgment ..............................................................10

        3.   The Wilmington Trust Litigation ............................................11

    E.   The Claims Process and Treatment of Claims....................................11

    F.   Preparing Reports For The Court.......................................................12

IV.  THE RECEIVER IS PREPARED TO WIND DOWN AND CLOSE THE RECEIVERSHIP ....................................................................13

V.   CONCLUSION ...........................................................................................13

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-2-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 21, 2019, at 10:00 a.m., in Courtroom 590 of the above-entitled Court, located at 255 E. Temple St., Los Angeles, CA 90012, David P. Stapleton, the Court-appointed receiver for Velocity Investment Group, Inc., Bio Profit Series I, LLC, Bio Profit Series II, LLC, Bio Profit Series III, LLC, Bio Profit Series V, LLC, Rockwell Realty Management, Inc., and their respective subsidiaries and affiliates (collectively, the "Receivership Entities" or "Entities"), will and hereby does present this Final Report and Accounting of Receiver (the "Final Report"), in accordance with Local Rule 66-6 and the Court's prior orders.

## I.   PRELIMINARY STATEMENT.

Pursuant to the orders by which the Receiver was appointed and the law governing federal equity receivers, the Receiver's most significant responsibilities during the pendency of the instant receivership case have included:

(1)   Marshalling and preserving all receivership assets ("Receivership Assets" or "Assets"), ultimately resulting in the recovery of $5.3 million for the benefit of the Receivership Entities;

(2)   Disposing of Assets, including marketing and selling a third party loan portfolio, securing Court approval for the sale of all residential and commercial properties owned by the Receivership Entities, reaching a settlement to resolve claims associated with a real property in Oak View, California, and securing the return of Assets obtained via an improper levy by the Franchise Tax Board against a Receivership Entity;

(3)   Completing two detailed forensic accountings of Receivership Assets and the financial condition of the Receivership Entities;

(4)   Eliminating Receivership Entity liabilities, including securing the dismissal of two actions against the Receivership Entities and satisfying pre-

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-3-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

receivership judgment recorded against a number of real properties owned by the Receivership Entities;

(5)     Proposing and securing Court approval for a plan for distribution of Receivership Assets;

(6)     Making a distribution to creditors of the Receivership Entities with allowed claims in the amount of $2,977,060.19; and

(7)     Preparing reports for the Court.

As reflected in this Final Report and in the concurrently filed Motion for Order: (1) Approving Final Report and Accounting; (2) Authorizing Payment of Final Fee Applications of Receiver and Professionals; (3) Authorizing Final Distribution and Establishing a Reserve; (4) Authorizing Submission of Appropriate Tax Returns; (5) Authorizing Abandonment or Destruction of Documents; and (6) Closing the Receivership and Discharging and Releasing Receiver (the "Wind-Down Motion"), the Receiver has satisfied the duties and obligations established by this Court at the inception of this receivership case.  Accordingly, the Receiver has determined, in his reasonable business judgment, that the costs of continuing the receivership now outweigh its benefits.  The Receiver accordingly anticipates that this will be his final report to the Court.

This Final Report provides a detailed description of the Receiver's actions both during the instant reporting period and throughout the receivership case with a summary of the most significant accomplishments of the receivership, along with a final, summary accounting reflecting receipts and disbursements for the receivership through December 31, 2018.

## II.     GENERAL BACKGROUND.

The Court and any interested parties are invited to review materials identified in **Exhibit A** attached hereto for a general summary of the relevant facts underlying the above-captioned case and the activities of the Receiver and his counsel of record, Allen Matkins Leck Gamble Mallory & Natsis LLP ("Professionals").  The

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-4-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

identified materials, and more, are available on the Receiver's website, www.velocityreceivership.com.

## III.   SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS.

Since the inception of the receivership case, and in connection with his responsibilities under the appointment orders, the Receiver has concentrated his efforts in the following areas:

### A.   Marshalling and Preservation of Receivership Assets

The Receiver's principal charge was to marshal and preserve Receivership Assets for the benefit and administration of the Receivership Entities, and for distribution to defrauded investors and others whose claims were ultimately allowed by the Court.  In order to accomplish this, and as further detailed below, the Receiver undertook an extensive document recovery, review, and analysis effort (including of tens of thousands of documents and records obtained from the Commission and various third parties, including banks, public entities, investors, and other creditors), ultimately resulting in two forensic accounting reports, and the marshalling of over $5.3 million in cash and other Receivership Assets, all of which have now been monetized for the benefit of the estate of the Receivership Entities (the "Receivership Estate").  The sources of the Receiver's recoveries included:

- Recoveries of cash Assets from bank accounts;
- Sale of a Receivership Entity loan portfolio;
- Rents collected directly from tenants of residential real property Assets;
- Sale of 26 real property Assets;
- Funds paid over by third-party property managers responsible for collecting rents;
- Funds paid over by residential loan borrowers and loan servicers;
- Funds received from settlement of claims associated with the pre-receivership fraudulent transfer of real property; and
- Interest on receivership balances.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-5-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

All told, during the pendency of the receivership, the Receiver recovered a gross amount of $5.3 million for the benefit and administration of the Receivership Entities.  The Receiver's final summary accounting reflecting receipts and disbursements for the receivership through December 31, 2018 is attached as **Exhibit B**.

**B.    Disposition Of Real Property Receivership Assets.**

As reflected in the Court's prior orders, the Receiver was authorized to market and prepare assets and real properties owned by the Receivership Entities for sale. The following is a summary of the Receiver's disposition of receivership assets:

1.    Loan Portfolio Owned by the Receivership Entities.

The Receivership Entities owned a pool of loans made to various homeowner third parties, secured by junior or subordinated interests in real estate.  Given the nature of these loans and the limited documentation available to the Receiver, the Receiver engaged diligent efforts to dispose of the loans, initially contemplating either a discounted payoff to borrowers or a sale of the entire pool to a third party buyer.  Ultimately, the Receiver elected to market and sell the loan portfolio because he was unable to negotiate discounted payoffs with borrowers.  The sale of the loan portfolio closed, resulting in a net return for the benefit of the Receivership Entities in the amount of approximately $230,000.

2.    Residential Properties Owned by the Receivership Entities.

During the course of the receivership, the Receiver expended considerable effort and diligently engaged in the marketing and sale of 25 residential properties[1] owned by the Receivership Entities.  The Receiver successfully marketed these residential properties, secured various agreements to purchase from buyers, and obtained approval from this Court for the sale of these residential real properties. The Receiver's diligent efforts resulted in the sale of all saleable residential property

---

[1]    Residential real properties consisted of several detached single-family dwellings, apartment and condominium units, a vacant lot, and several multi-unit properties.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-6-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

1   which, in the aggregate, yielded net proceeds for the benefit of the Receivership

2   Entities in the amount of approximately $2.0 million.

3       In addition to the sales of the residential real properties, the Receiver also

4   obtained Court approval for the abandonment of two real properties that reflected

5   net liabilities to the Receivership Entities.

6       3.   Commercial Real Property Owned by the Receivership Entities.

7       The real property located at 26655 Highland Avenue, Highland, California

8   (the "Highland Property") remained the most valuable commercial real property

9   Receivership Asset for most of the duration of the Receivership.  The Highland

10  Property was a vacant and abandoned former K-Mart, which suffered from

11  significant deferred maintenance and issues with accumulated debris.  It was also

12  subject to two substantial liens, in the aggregate value of approximately $3 million.

13  In addition, the first-position loan on the Highland Property was cross-collateralized

14  by two other real properties owned by the Receivership Entities.

15      The Receiver worked diligently with the Highland Property's ultimate buyer,

16  REAL Journey Academies ("REAL") to successful close the sale of the property.

17  Though the closing of the sale was delayed, after substantial effort by the Receiver,

18  all outstanding issues associated with sale of the Highland Property were resolved,

19  and the sale of the property closed on August 31, 2017.  From the sale, the Receiver

20  obtained substantial net proceeds, in the amount of $731,721.45, for the benefit of

21  the receivership.

22      4.   Ojai Property Settlement.

23      As previously reported, at some point in the pre-receivership period, the

24  Receivership Entities had an interest in the real property located at 158 Rockaway

25  Road, Oak View, California (the "Ojai Property").  However, the Ojai Property was

26  not part of the Estate, having been transferred in the pre-receivership period from

27  Bio Profit Series I, LLC to Ojai Oakview, LLC ("Ojai Oakview"), an entity at least

28  partially controlled by an Entity insider, for no apparent consideration.  The

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1132914.07/LA

-7-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

1  Receiver therefore initially determined that the Ojai Property was fraudulently
2  transferred to Ojai Oakview.

3      The Receiver engaged in extensive discussions and a detailed review of
4  public records and materials provided by Ojai Oakview.  Ultimately, the Receiver
5  determined, in his reasonable business judgment, that it was in the best interest of
6  the Receivership Entities to accept a one-time, lump-sum payment in the amount of
7  $350,000 from Ojai Oakview to resolve all claims.  The Court approved this
8  settlement and the funds were collected for the benefit of the Estate.

9                  5.    <u>Refund of Monies Improperly Levied by the Franchise Tax</u>
10                     <u>Board</u>

11     In addition to the real property recoveries, the Receiver also successfully
12 secured the return of approximately $21,000 in Receivership Assets obtained via an
13 improper levy by the Franchise Tax Board (the "FTB") against a Receivership
14 Entity account, and in violation of the Court's orders.[2]  Specifically, upon discovery
15 of the levy, the Receiver and his counsel promptly contacted representatives of the
16 FTB to return the funds.  The FTB failed to comply with the Receiver's written
17 requests and only responded after the Receiver prepared and provided the FTB with
18 notice of an anticipated *ex parte* application for an order to show cause re: sanctions.
19 In response to the notice of *ex parte*, and after meeting and conferring with the
20 Receiver's counsel, the FTB ultimately agreed and returned the subject funds.

21 **C.**    **Performing An Accounting And Analysis of the Receivership**
22         **Entities' Financial Activities and Condition**.

23     The Receiver and his forensic accounting team successfully conducted two
24 separate forensic accounting reviews of financial documents related to the business
25 and financial activities of the Receivership Entities.  The documents reviewed

26

27 [2]  This levy was imposed notwithstanding the fact that the Receiver, through
28 counsel, had previously advised the FTB of the Receiver's appointment and
provided a copy of the appointment orders, with a reference to the self-help bar
contained therein.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1132914.07/LA

Case No. CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

-8-

included those relating to inter-Entity transfers, the nature of investments, payments to investors and other creditors, and a list of assets associated with the Receivership Entities.

The Receiver's preliminary forensic analysis confirmed the following:

- There was significant commingling of assets among the Entities;
- The characteristics of a Ponzi-like investment scheme were present, based on the Entities' use of new investor funds to pay outstanding obligations to older investors;
- The various Receivership Entities were operated as a unitary enterprise; and
- Of the approximately $155 million contributed by investors, $78 million was paid to investors in the form of interest and redemptions and approximately $38 million was paid to apparent insiders or affiliated parties.

The Receiver later performed a second forensic accounting review that confirmed the conclusions drawn from his initial analysis.

**D.     Elimination Of Receivership Entity Liabilities.**

At the time the Receiver was appointed, the Receivership Entities were subject to the following litigation and judgment enforcement efforts, all of which have since been resolved:

1.     The Huntington Capital Litigation.

Huntington Capital, L.P. ("Huntington") lent $1.5 million, secured by the Ojai Property, and later had its security interest subordinated to that of Bio Profit Series I, LLC ("BioProfit").  Huntington commenced litigation to reinstate its lien priority, only to have its lien extinguished by BioProfit's acquisition and foreclosure of the senior-most lien on the property.  This resulted in the dismissal of its original state court action against BioProfit, and the commencement of the California Court of

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-9-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

1  Appeal matter styled <u>Huntington Capital, LP v. Autumn Years at Ojai; et al.</u>, Case

2  No. B252233 (the "Huntington Appeal").

3       Contemporaneously with the Huntington Appeal, Huntington commenced the

4  action styled <u>Huntington Capital, LP v. Bio Profit Series I, LLC; et al.</u>, Ventura

5  Superior Court Case No. 2014-00450526-CU-NP-VTA (the "Ventura Action"),

6  challenging what it identified as the fraudulent transfer of the Ojai Property and,

7  again, seeking more than $1.5 million in damages against certain Receivership

8  Entities.

9       With the Court's permission, the Receiver successfully resolved both the

10  Huntington Appeal and the Ventura Action.  Specifically, both matters were

11  dismissed with prejudice against the Receivership Entities, with a full release from

12  Huntington, in exchange for a one-time, lump-sum payment of $12,000 from the

13  Receivership Entities to Huntington.  By this settlement, the Receiver obtained the

14  release of more than $1.5 million in prospective Receivership Entity liability, and

15  successfully leveraged the release to secure the above-described settlement

16  regarding the Ojai Property.

17          2.   <u>The Stovall Judgment.</u>

18       In or around January 2014, months before the Receiver was appointed,

19  Shirley Stovall, a pre-receivership creditor, secured a judgment (the "Stovall

20  Judgment") against BioProfit in the amount of $45,684.64, in the action styled

21  <u>Stovall v. Bio Profit Series I, LLC; et al.</u>, Los Angeles Superior Court Case No.

22  BC405576.  The Stovall Judgment was recorded against a number of real properties

23  owned by the Receivership Entities and was subject to satisfaction upon the sale of

24  any Receivership Assets against which it was recorded.  With the Receiver's efforts,

25  these sales closed and the Stovall Judgment was fully satisfied and released against

26  the Receivership Assets.

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-10-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

### 3.    The Wilmington Trust Litigation.

The Receiver has satisfied a request for production of documents, pursuant to appropriate subpoenas, in the matter styled <u>Liu, et al. v. Wilmington Trust, Co.</u>, U.S.D.C. W.D.N.Y. Case No. 6:14-cv-06631-EAW-JWF (the "Liu Action").  The Liu Action is a purported class action investor lawsuit against Wilmington Trust Company, one of the financial institutions that administered Receivership Entity accounts.  While neither the Receiver nor any of the Entities are parties to the Liu Action, each of the litigants in the matter requested voluminous productions from the Receiver, including production of materials containing investor-specific information, including social security numbers and other identifiers.

After confirming that any productions from his office would be designated as confidential under an existing protective order in the Liu Action, and being assured by counsel for both the Plaintiffs and Defendants in the matter that all fees and costs incurred in connection with the production would be reimbursed, the Receiver satisfied the request.  Wilmington Trust Company has partially reimbursed the Receiver for the fees and costs incurred for his efforts.

### E.    The Claims Process and Treatment of Claims.

At the inception of the receivership, the Entities had few assets of value. Nonetheless, the Receiver succeeded in recovering funds sufficient to make a distribution on allowed claims of approximately $3 million.  To do so, the Receiver utilized a list of investors and creditors of the Receivership Entities compiled from a variety of sources, including data retrieved from Receivership Entity records and correspondence from investors.

The Receiver concluded that a streamlined process for soliciting and evaluating claims from these investors and creditors was appropriate.  Accordingly, the Receiver developed a summary claims procedure that involved: (1) establishing a claims bar date; (2) soliciting the submission of claims from Receivership Entity investors and creditors well in advance of the claims bar date; (3) processing timely

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1132914.07/LA

-11-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

1   claims and developing a recommendation for the treatment of claims; and

2   (4) submitting the Receiver's recommendation for the treatment of each claim by

3   noticed omnibus motion to the Court for approval (the "Claims Procedures

4   Motion").  The Court granted the Receiver's Claims Procedures Motion on March 8,

5   2017.  In accordance therewith, a claims bar date was set for May 26, 2017.

6        Ultimately, 1,122 timely investor and non-investor claims were submitted to

7   the Receiver requesting payment of more than $99 million.  The Receiver

8   commenced an initial review of the claims to ensure that they were complete, not

9   duplicative of claims submitted by other persons or entities, and supported by

10  documentation appropriate to the nature of the claim.  The Receiver then prepared a

11  claims summary that identified each claimant, each claimant's net claim amount, the

12  Receiver's recommended treatment of each claim, and any information uniquely

13  relevant to each claim (the "Claims Summary").

14       As noted above, the Receiver then secured Court approval of his

15  recommended treatment of claims, proposal for allowance and disallowance of

16  claims, and proposed allowed claim amounts as specifically set forth in the

17  Receiver's Claims Summary.  The Court authorized the Receiver to make a one-

18  time, *pro rata* distribution in the aggregate amount of $2,922,637.98 for all allowed

19  investor claims. The Court also approved the Receiver's recommendation for

20  allowance and disallowance of specified non-investor creditor claims, and

21  authorized the Receiver to make a one-time, *pro rata* distribution in the amount of

22  $54,422.21 for the non-investor claim submitted by Huntington Capital, L.P.

23       In addition, the Receiver recently received additional tax refunds in the

24  amount of approximately $168,000 associated the previous sale of real properties

25  out of receivership.  Given the amount received and the anticipated costs of case

26  administration through the conclusion of this receivership, the Receiver believes it is

27  appropriate to establish a reserve and make a final distribution to investors and

28  creditors on the terms as proposed in the Wind-Down Motion.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-12-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

### F.     Preparing Reports For The Court.

Prior to this Final Report, the Receiver prepared and filed a total of six interim reports.  Each report provided a summary of the Receiver's performance of his duties under the appointment orders and identified key developments during the applicable reporting period.  The Interim Reports also summarized the Receiver's findings regarding the financial activities of the Receivership Entities, and the Ponzi-like nature, size, and scope of the scheme underlying their business.  The fundamental conclusions presented therein have not changed since their first presentation; indeed, all subsequent document recovery and analysis have bolstered the Receiver's conclusions.

## IV.     <u>THE RECEIVER IS PREPARED TO WIND DOWN AND CLOSE THE RECEIVERSHIP.</u>

The funds the Receiver presently holds are those remaining funds previously set aside per Court order to cover the fees and expenses incurred by the Receiver and the Receiver's counsel, and the additional funds received from recent tax returns.  Given that the Receiver has completed his tasks as defined by the appointment orders, and the Receiver's determination that the costs of continuing the present receivership now outweigh any potential benefit, the Receiver respectfully submits that it is now appropriate to wind-down the affairs of the Receivership Entities, establish an reasonable reserve, and make a final distribution to investors and creditors with allowed claims on the same *pro rata* basis as previously approved by this Court.

The only remaining uncompleted tasks in this matter are all administrative, and relate exclusively to the wind-down and termination of the receivership case.  To that end, the Receiver anticipates that this Report will represent the Receiver's final report to the Court.  In addition to this Report, the Receiver has concurrently submitted the Wind-Down Motion, along with his and his Professionals' Final Fee

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-13-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER

1  Application, and a Memorandum of Points and Authorities and Declaration in

2  support thereof.

3  **V.      CONCLUSION.**

4         Based on the Receiver's investigation and findings as described above, the

5  Receiver requests that the Court approve this Final Report and the final accounting

6  attached hereto, and accept his findings and conclusions as presented herein.  The

7  Receiver further respectfully requests that this Court accept this report as his final

8  report, and enter an order granting the relief requested in the concurrently filed

9  Wind-Down Motion.

10

11  Dated:  April 22, 2019                    Respectfully submitted,

12                                            ALLEN MATKINS LECK GAMBLE
                                                MALLORY & NATSIS LLP
13                                            DAVID R. ZARO
                                              JOSHUA A. DEL CASTILLO
14                                            TIM C. HSU

15                                            By:_____/s/ *Tim C. Hsu*

16                                               TIM C. HSU
                                                 Attorneys for Receiver
17                                               DAVID STAPLETON, Receiver for
                                                 VELOCITY INVESTMENT GROUP,
18                                               INC.

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1132914.07/LA

-14-

Case No.  CV 13-7553-JAK (SSx)
FINAL REPORT AND ACCOUNTING OF
RECEIVER